UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE WILDERNESS SOCIETY, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BUREAU OF LAND MANAGEMENT ) <br> et al. ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 01-2210 (RBW) <br><br> **FILED** <br><br> JAN 1 5 2003 <br><br> NANCY MAYER WHITTINGTON, CLERK <br> U.S. DISTRICT COURT |

### MEMORANDUM OPINION[1]

This lawsuit concerns a Freedom of Information Act ("FOIA") request made by the plaintiffs, the Wilderness Society and the Southern Utah Wilderness Alliance. Plaintiffs challenge the scope of the defendants'[2] search for documents responsive to plaintiffs' request and the defendants' withholding of documents sought by plaintiffs pursuant to Exemption 5 of the FOIA. Plaintiffs also challenge the sufficiency of the Vaughn[3] index the defendants have submitted. The matter is currently before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court concludes that summary judgment can not be granted to either party until the defendants supplement their search for records that are responsive to

---

[1]The court heard oral arguments in this matter on January 9, 2003, to afford the parties the opportunity to address several questions the Court needed answered before this Opinion could be issued.

[2]The defendants include the Bureau of Land Management (BLM), Nina Rose Hatfield, in her capacity as Acting Director of the BLM; and Gail Norton, in her capacity as the Secretary of the Department of the Interior ("DOI").

[3]Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977 (1974).



plaintiffs' request and a revised <u>Vaughn</u> index is submitted by the defendants.

## I. Factual Background

The events underlying the plaintiffs' FOIA request are as follows: On June 14, 2000, the State of Utah ("the State") sent a Notice of Intent to Sue pursuant to the Quiet Title Act, 28 U.S.C. § 2409(a) (2000) to the United States Department of the Interior ("DOI"). Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("Pls.' Facts") ¶ 2. In this letter, the State informed the DOI of its "intention to file suit with regard to the ownership of certain highway rights-of-way acquired pursuant to R.S. [Revised Statute] 2477 (43 U.S.C. § 932)." Plaintiffs' Memorandum in Support of Motion for Summary Judgment ("Pls.' Mem."), Exhibit ("Ex.") B (Letter to the Honorable Bruce Babbitt, Secretary of the Interior, from Stephen G. Boyden, Assistant Attorney General for the State of Utah, dated June 14, 2000). Specifically, the State argued that federal officials had "closed or attempted to close highways which are part of the State's highway system across federal lands and interfered with the actions of State and local officials and personnel in connection with maintenance, improvement, construction, management and other normal highway activities." Id. The State attached twenty-nine maps to its June 14, 2000 letter, which depict the highways that would be the subject of the State's lawsuit. These highways were highlighted on the maps by the State with red markings and the State expressly noted that the "[h]ighways appearing in red on the map d[id] not represent the entire universe of R.S. 2477 highways within the State." Pls.' Mem. Ex. B at 2. Since the filing of its Notice of Intent to Sue, the State and the Bureau of Land Management ("BLM") have engaged in "numerous meetings" to discuss the State's R.S. 2477 claims. Pls.' Facts ¶ 6.

Plaintiff, the Wilderness Society, is a "non-profit environmental organization . . . [that] works

2

to protect America's wilderness and to develop a national network of wild lands through public education, scientific analysis and advocacy." Compl. ¶ 4.[4] Plaintiff, the Southern Utah Wilderness Alliance, is "a non-profit corporation dedicated to the sensible management of all public lands within the State of Utah . . ." Id. ¶ 5. Plaintiffs seek to obtain pursuant to the FOIA all documents pertaining to the discussions between the State and federal officials concerning the State's R.S. 2477 claims. Plaintiffs argue that a determination that the State is in fact entitled to its claimed rights-of-way would have "serious consequences for the management and future of federal lands in Utah." Pls.' Facts ¶ 4.[5] Therefore, on May 29, 2001, plaintiffs filed a FOIA request,[6] addressed to the BLM's FOIA Coordinator, seeking "a copy of all documents and any other information pertaining . . . to [the] discussions [regarding] the claims made by Utah and local governments under R.S. 2477, including the claims made in a notice sent by the state pursuant to the federal Quiet Title Act." Pls.' Mem., Ex. A (Letter to the BLM's FOIA Coordinator from Robert B. Wiygul of Waltzer & Associates, dated May 29, 2001). Plaintiffs sought records of all meetings, correspondence, internal memoranda or other discussions, notes of telephone conversations, emails, and maps or "other geographic representations prepared in

---

[4] References to "Compl." are to the complaint that was filed in this matter on October 25, 2001.

[5] One such consequence they claim would be the "de facto transfer to the State of innumerable dirt roads, tracks and trails that are currently under the management of the federal government." Pls.' Facts ¶ 5. These roads would then allegedly lose their current environmental protections under federal environmental statutes, such as Section 7 of the Endangered Species Act and the National Environmental Policy Act. Id. Plaintiffs also note that if successful on its R.S. 2477 claim, the State would be able to determine the future use of the rights-of-way and this "could conceivably open the roads to all manner of heavy machinery to 'improve' the alleged roads and allow unlimited vehicular access to environmentally sensitive lands." Id.

[6] The request was filed "on behalf of the Grand Canyon Trust, Great Old Broads for Wilderness, Southern Utah Wilderness Alliance, The Wilderness Society, and Utah Wildlands Project," which were described as "non-profit membership organizations committed to preserving Utah's outstanding natural resources and dedicated to educating the public about public lands management issues in Utah." Pls' Mem., Ex. A (Letter to BLM's FOIA Coordinator from Robert B. Wiygul of Waltzer & Associates, dated May 29, 2001, at 2).

connection with . . . discussions" concerning the State's R.S. 2477 claims. Id.

On July 16, 2001, plaintiffs received the defendants' response to their FOIA request.[7] The letter, while accompanied with documents that were determined not to be exempt from disclosure, also stated that other documents were being withheld pursuant to Exemptions 4 and 5 of the FOIA. Pls.' Mem., Ex. C (Letter to Mr. Robert Wiygul from Sally Wisely, State Director of the BLM, Utah State Office, dated July 16, 2001). Plaintiffs administratively appealed this decision on August 1, 2001, and the appeal was denied by the BLM on August 28, 2001.[8] Pls.' Facts ¶ 10. Plaintiffs then filed this action in this Court on October 25, 2001, and on June 3, 2002, the BLM filed its Vaughn index with this Court.[9]

II. Analysis

A. The Parties' Arguments and the Standard of Review

The court may grant summary judgment when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be gleaned from the facts before the court must be

---

[7]On June 29, 2001, the defendants requested, via letter, a 10-day extension. Pls'. Mem., Ex. C; Defs.' Mem., Declaration of Ted D. Stephenson, dated May 30, 2002 ("Stephenson Decl.") ¶ 7.

[8]The denial of the administrative appeal was not based on substantive grounds; rather a letter sent to plaintiffs by the defendants, which constructively denied plaintiffs' appeal, indicated that although plaintiffs' appeal had been received on August 2, 2001, that as of the date of the defendants' letter, August 28, 2001, the appeal remained in the Office of Solicitor for legal review. Pls.' Mem., Ex. H (Letter to Mr. Eric Huber from William W. Wolf, DOI's FOIA Appeals Officer, dated August 28, 2001). This dual response resulted from the indication in defendants' letter that the requesting parties had the "right to treat the delay in responding to your appeal as a final denial of the request and [plaintiffs therefore had the right] to seek judicial review . . ." Id.

[9]When their Vaughn index was filed, the defendants also submitted additional documents to the plaintiffs that were responsive to the plaintiffs' initial request. Pls.' Mem., Ex. D (Letter to James S. Pew, EarthJustice Legal Defense Fund, from Heather Graham Oliver, Assistant United States Attorney, dated June 3, 2002).

construed in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In a FOIA case, to satisfy this standard, the "defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements." Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982) (internal quotation marks and citation omitted). When reviewing an agency's denial of a plaintiff's FOIA request, "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA's] exemptions[.] . . . [T]he burden is on the agency to sustain its action." 5 U.S.C. 552(a)(4)(B) (2000); see also Founding Church of Scientology of Washington, D.C., Inc. v. National Security Agency, 610 F.2d 824, 830 (D.C. Cir. 1979). In addition, when determining the adequacy of the agency's search for responsive records the Court must ensure that the agency has "not . . . read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." Hemenway v. Hughes, 601 F. Supp. 1002, 1005 (D.D.C. 1985).

As already indicated, the parties have each filed motions for summary judgment. In support of their motion, the plaintiffs make three substantive challenges to the defendants' withholding of the documents they have not received. First, plaintiffs argue that the Vaughn index submitted by defendants excludes documents plaintiffs know exist and are relevant to their request, and plaintiffs claim that their knowledge of the documents' existence establishes that the defendants did not conduct a reasonable search for the documents plaintiffs sought to obtain. Pls.' Mem. at 3-4; Plaintiffs' Response in Opposition to Defendants' Cross-Motion for Summary Judgment and

Reply in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Reply") at 3-6. Next, regarding the exemptions asserted by the defendants, plaintiffs argue that the justifications for the claimed exemptions provided in the Vaughn index are not sufficiently detailed to provide the plaintiffs or the Court with enough information to determine whether the claimed exemptions in fact apply. Pls.' Mem. at 6; Pls.' Reply at 10-12. Third, plaintiffs challenge the applicability of the exemptions by the agency. Because the Court concludes that the agency has not conducted a reasonable search for the requested documents and the Vaughn index is deficient, it need not reach the merits of whether the defendants have properly asserted the exemptions at this juncture.

B. Reasonableness of the Search

The first issue the Court must address is whether documents encompassed by plaintiffs' request were excluded from the agency's search because the scope of the request was construed too narrowly. Plaintiffs state that the Vaughn index that has been submitted by the defendants does not include reference to documents plaintiffs know exist and are encompassed by their request. These documents include the 29 maps that were attached to the State's Notice of Intent to Sue; writings from the BLM addressed to the State regarding the State's claims, specifically including a letter to the State from former Secretary of the DOI John Leshy; and documents listed by the State in its Vaughn index that were filed in connection with state court litigation in Utah, which lists a June 14, 2000 letter from Stephen G. Boyden to the DOI and a January 2001 response to Boyden's letter from the DOI. Pls.' Mem. at 3-4. Plaintiffs argue that the omission of these patently relevant documents demonstrates that the defendants did not conduct a reasonable search for documents in response to plaintiffs' request. Id. at 4.

In response to these allegations, the defendants reply that they did not deem the

aforementioned documents responsive to plaintiffs' request "because [these documents] were neither used in nor resulted from [the discussions pertaining to the State's claims]." Defendants' Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Mem.") at 4. Defendants argue that plaintiffs' initial request was merely for documents "pertaining to the <u>discussions</u> between Utah State and local government . . . and federal personnel concerning claims to rights-of-way over federal lands in Utah[,]" and did not encompass, contrary to plaintiffs' assertion, "<u>all documents the State had presented to BLM allegedly supporting the State's claims</u> . . ." <u>Id.</u> n.7 (emphasis in original). Despite this position, the defendants now represent their willingness to provide plaintiffs with copies of the State's Notice of Intent to Sue and the Leshy letter. Defendants' Reply to Plaintiffs' Response in Opposition to Defendants' Cross-Motion for Summary Judgment ("Defs.' Reply") at 5. And, although the defendants did not state in their pleadings their willingness to provide plaintiffs with the 29 maps that were attached to the State's Notice to Sue in response to plaintiff's request, they did indicate that the maps "have been and are available for public review." <u>Id.</u> And, during oral arguments, counsel for defendants represented that the defendants are now willing to produce the maps.

To determine the adequacy of the agency's search, the Court "must first ascertain the scope of the request itself." <u>Nation Magazine, Washington Bureau v. United States Customs Service</u>, 71 F.3d 885, 889 (D.C. Cir. 1995). Although a requester has an obligation to "reasonably describe" the records it seeks to obtain, 5 U.S.C. § 552(a)(3), "an agency also has a duty to construe a FOIA request liberally." <u>Nation Magazine</u>, 71 F.3d at 890 (citations omitted). "In considering a challenge to an agency's retrieval procedures, a reviewing court must . . . determine whether the

materials submitted by the agency satisfactorily demonstrate the apparent adequacy of the search conducted." Perry, 684 F.2d at 127. To make this determination, the Court must consider the agency's affidavits that purportedly demonstrate that a reasonable search was performed. Id. at 126. However, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. Department of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1984).

Defendants have submitted two declarations which they contend affirm the reasonableness of the search that was conducted in this matter. The first is the declaration of Ted D. Stephenson, the Litigation Coordinator in the BLM's Utah State Office. In his declaration, Stephenson states that he "reviewed documents that [he] had that [were] potentially responsive to this request and . . . contacted the appropriate BLM Utah Offices and personnel to ensure that all responsive materials were accounted for." Defs.' Mem., Declaration of Ted D. Stephenson, dated May 30, 2002 ("Stephenson Decl.") ¶ 6. The second declaration, submitted by Amy M. Edwards, the Washington Office FOIA Coordinator for the BLM,[10] represents that Ms. Edwards personally searched for, but did not locate, responsive records at the BLM's Washington, D.C. office, and lists several persons whom Ms. Edwards contacted requesting responsive records, two of whom were able to furnish such documents. Defs.' Mem., Declaration of Amy M. Edwards ("Edwards Decl."), dated August 12, 2002, ¶¶ 4-5.

"[T]he competence of any records-search is a matter dependent upon the circumstances of the case[.]" Founding Church of Scientology, 610 F.2d at 834. However, here the Court's

---

[10]Ms. Edwards received a copy of the plaintiffs' FOIA request on January 25, 2002, from Eric Eisenstein, Esq., Division of General Law, Office of the Solicitor. Edwards Decl. ¶ 3. Mr. Eisenstein requested that Ms. Edwards complete her search within ten days. Id.

assessment is simplified and the declarations submitted in this case are not determinative of the sufficiency of the search[11] because the government also candidly admits that it did not deem documents submitted by the State in support of its claims as responsive to plaintiffs' request for documents "pertaining to" discussions between the State and federal government officials regarding the State's claimed rights-of-way.[12] In addition, the defendants do not justify the withholding of certain documents, such as the Leshy and Boyden correspondence, that appear to be responsive to plaintiffs' request. Moreover, neither of the two declarations submitted indicate what universe of records were deemed to be responsive; they only provide information about the locations that were to be searched.[13] In Nation Magazine, the requester sought documents pertaining to then-Presidential candidate Ross Perot, "especially . . . documents and records that pertain[ed] to offers by Mr. Perot to assist the Customs Service in the interdiction of illegal

---

[11]Although the government is justified in relying on the declarations it has submitted to "show it has conducted a reasonable search [the declarations should be] relatively detailed and nonclusory . . ." Weisberg, 705 F.2d at 1351. As discussed further, infra, the declarations submitted by the defendants in this case provide no description of the universe of records that were considered to be potentially responsive. Mr. Stephenson's declaration states that he "reviewed the documents I had that are potentially responsive to this request and, based on my personal knowledge, I contacted the appropriate BLM Utah office and personnel to ensure that all responsive materials were accounted for." Stephenson Decl. ¶ 6. Although Ms. Edwards' declaration is more specific, and lists the persons she contacted for materials as well as their positions with the agency, she again provides no indication of her understanding of the scope of the search or the records deemed to be responsive. Indeed, she merely states that her "preliminary search and inquiries" did not produce any responsive records, Edwards Decl. ¶ 4, and that she is "aware of" documents that "were forwarded directly to the Office of the Solicitor to be considered for inclusion in the Defendants' Vaughn Index or packaged of released materials." Id. ¶ 5.

[12]At oral argument, counsel for the government argued that the Stephenson declaration sufficiently establishes that the scope of the search was adequate. However, government counsel did not reconcile Mr. Stephenson's declaration with counsel's representation in defendants' pleading regarding the manner in which the search was interpreted. In any event, the Stephenson declaration does not state the manner in which Mr. Stephenson himself interpreted the request and whether he interpreted it narrowly. Therefore, this omission creates a material issue of fact regarding whether the search was reasonable in scope.

[13]Although at the time the search was initially conducted, the plaintiffs' request was not submitted to either the Office of the Solicitor or the Office of the Secretary (Office of Administrative Services), Stephenson Decl. at 2 n.1, defendants state that the search of the BLM Utah Office was "supplemented by the January-February 2002 BLM headquarters search discussed in Ms. Edwards' declaration." Defs.' Mem. at 3.

drugs." 71 F.3d at 888 (internal quotation marks omitted). The Customs Service limited its search to documents found in the "'Privacy Act systems of records' which include[d] all records accessible by a name or personal identifier." Id. at 889. The Customs Service argued this was an "adequate" search "because [the requesters] only asked for records 'indexed and cross-indexed' to Perot's name." Id. at 890. The requesters disagreed with this characterization of their request, arguing that "it extended to documents . . . which contain[ed] information relevant to Perot's offers of assistance, but are not filed under Perot's name." Id. In agreeing with the requesters, the court of appeals noted that their request did "ask for records indexed under Perot's name, but it also explicitly [sought] information 'pertaining' to Perot and information regarding offers by Perot to assist Customs in drug interdiction efforts." Id. In addition, the court noted that one document, "the Chadwick memo," that was specifically identified in the request did not even mention Perot's name. Id. The court concluded that the "words 'pertaining to' coupled with the inclusion of references to the Chadwick memo in the materials appended to the request letter, were sufficient to alert the agency that appellants sought information about Perot, even if it was not indexed under his name." Id.

Consistent with the ruling in Nation Magazine, this Court finds that plaintiffs' request, construed liberally as it must be, 71 F.3d at 890, encompassed documents, such as the Leshy and Boyden letters, that were sent to the State concerning its R.S. 2477 claims. Indeed, in enumerating the types of documents they sought, plaintiffs requested "[c]orrespondence relating to discussions of right-of-way claims" and "maps and other graphic representations prepared in connection with such discussions." Pls.' Mem., Ex. A. In addition, plaintiffs noted in their request that the discussions about which they sought information "include[d], although . . . [it

was] not be limited to, the claims made by Utah and local governments under R.S. 2477, including the claims made in a notice sent by the state pursuant to the federal Quiet Title Act." Id. A liberal interpretation of this request clearly, at the minimum, includes the Leshy and Boyden letters as they presumably[14] include discussions about the State's asserted right-of-way claims, and therefore must be disclosed unless they are exempt from disclosure.

"Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate." Perry, 684 F.2d at 127. Defendants' response clearly indicates that responsive documents in the locations searched may not have been produced as a result of the defendants' narrow interpretation of plaintiffs' request. See Founding Church of Scientology, 610 F.2d at 836 (holding that although "the trial court may be warranted in relying upon agency affidavits . . . in adjudicating the adequacy of the agency's identification and retrieval efforts . . . [,]the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order."). Although the Court appreciates that the question is not "whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,]" Perry, 684 F.2d at 128, the government's own admission that the search was not broadly construed to include documents that pertained to the State's R.S. 2477 claims, compels the Court to conclude that a further search must be conducted.

In addition, aside from the deficiency of the scope of the search, the Court concludes that the

---

[14]Although the Court does not make a determination whether these documents must be produced, it notes that the defendants have stated that they are willing to produce the documents and have not asserted that the documents are protected by any FOIA exemption.

11

declarations submitted do not set forth the universe of documents that were searched and the method used, if any, to search for responsive documents.[15] See Nation Magazine, 71 F.3d at 890 (noting that agency's affidavits submitted in support of its contention that a search was reasonable "must be 'reasonably detailed . . ., setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.' . . . Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment.") (citations omitted). The Court will therefore order the defendants to conduct further searches of the BLM Utah and Washington, D.C. offices to ensure that all responsive, non-exempt documents are produced that pertain to any of the State's discussions with federal officials regarding the subject R.S. 2477 claims.[16] See, e.g., Founding Church of Scientology, 610 F.2d at 834-35 (holding that the circumstances underlying the agency's search raised "substantial doubts" about the "caliber" of the agency's search for documents and holding that the district court's grant of summary judgment "was improper because an issue of material fact [- as to] the adequacy of the search [-] was apparent on the record."); Nation Magazine, 71 F.3d at 891-92 (reversing district court's grant of summary

---

[15] Neither of the defendants' two declarants states in what manner the materials that were relevant to plaintiffs' request were maintained. It appears from Ms. Edwards' declaration that potentially responsive documents were emails that were sent to various individuals and that there was no single repository of information regarding plaintiffs' request. If indeed this is the state of affairs at the Washington D.C. BLM office, that fact should be revealed.

[16] In reaching this decision, the Court notes that the agency in fact produced additional documents, after this litigation was instituted, that were responsive to plaintiffs' request. Although this fact is not dispositive of whether the search was reasonable, as was recognized by the Circuit Court in Goland v. CIA, "the discovery of additional documents is more probative that the search was not thorough than if no other documents were found to exist." 607 F.2d at 370. But see Perry, 684 F.2d at 128 (holding that, although the retrieval of additional documents may be "probative that the search was not thorough[,]" in the case before the court where "[o]ver 600 pages of materials were released . . . [and] only ten pages of records were released . . . after the execution of the affidavits . . . the circumstances surrounding this delay indicate neither artifice nor subterfuge but rather, at worst, administrative inefficiency.").

judgment to agency where there was a material issue of fact regarding the adequacy of the agency's search stating that "[i]f we agreed with the agency's position that appellants sought only those records indexed under Perot's name, we might find this search adequate. But . . . we have construed the scope of appellants' request more broadly than did Customs, to include 'subject matter files[,]'" and noting that the agency failed to "describe its recordkeeping system in sufficient detail to permit [the court] to identify what subject matter files . . . might hold responsive information . . ."); Hemenway, 601 F. Supp. at 1005 (holding that although plaintiff's request was "ambiguous" the request nonetheless encompassed information that the defendants sought to exclude "[b]ecause the defendants had reasonably clear notice of what the plaintiffs sought . . ."). Cf. Weisberg, 705 F.2d at 1356 (affirming district court's grant of summary judgment to the agency where a "deposition demonstrat[ed] that the FBI's searches have been more than adequate and that there is no longer any material doubt that the agency has taken all reasonable steps to locate the documents Weisberg seeks.").

C. Sufficiency of the Vaughn Index

Having determined that it is not clear that the agency conducted a sufficient search for responsive records, the Court must grant plaintiffs' motion for summary judgment in part and deny defendants' motion for summary judgment and require defendants to supplement their search. However, the Court finds it necessary to further comment on the sufficiency of the Vaughn index that has been submitted to the Court at this time. Hopefully these comments will be considered by the agency before it files a renewed summary judgment motion.

In their Vaughn index, the defendants have listed 28 documents that were withheld either in part or totally. Pls.' Mem., Ex. D. While the Court will not comment on each entry in the

Vaughn index, the Court notes that some responses regarding the deliberative process exemption asserted by defendants, 5 U.S.C. § 552(b)(5), are clearly inadequate. For example, as to a document designated as document number 19 of defendants' Vaughn index, which is an email from Sally Wisely, an employee at BLM's Utah State Office, to Tom Fulton, Deputy Assistant Secretary of the DOI's Land and Minerals Management Office, Nina Hatfield of the BLM, "and other Office of the Solicitor and BLM Personnel regarding RS 2477[,]" the defendant's justification for claiming that this item is exempt from disclosure is articulated as: "Deliberative Process and Attorney Client Communication. Provides information regarding meeting held with county personnel." Pls.' Mem., Ex. D at 6. This explanation hardly provides a sufficiently detailed description for the basis of the claimed exemption.[17] See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974) (holding agency did not sufficiently justify its withholding of documents pursuant to "three distinct exemptions. . . . While it is not impossible, it seems highly unlikely that a particular element of the information sought would be exempt under both exemptions. Even if isolated portions of the document are exempt under

---

[17] At oral argument, plaintiffs also raised entry number 18 of defendants' Vaughn index as another example of an insufficient entry. That entry, titled simply "Minutes of Meeting with County[,]" is withheld from disclosure based on the deliberative process exemption and is described as "[s]tates facts and thoughts about a May 2001 meeting on road issue negotiations process." Pls.' Mem., Ex. D at 6. In response, defense counsel stated that the document may have been inappropriately titled and that it is not a mere factual rendition of what occurred at the meeting, but is an agency employee's evaluation about what occurred during the meeting. This exchange blatantly displays the need for the agency to supplement its Vaughn index and to carefully review each of its entries to ensure that each entry is an accurate representation of the nature of the document. In addition, the Stephenson affidavit's representation that documents that have been withheld under the deliberative process exemption contain facts that "are inextricably intertwined such that they could not be segregated for release[,]" Stephenson Decl. ¶ 12, is, as plaintiffs correctly noted at oral argument, not sufficient. See Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260, 261 (D.C. Cir. 1977) (holding that agency claiming that facts contained in purportedly exempt documents were "inextricably intertwined with exempt portions" had to provide the court and the requesting party with "a description of which parts of the withheld documents are non-exempt . . . [and] should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.").

more than one exemption, it is preposterous to contend that all of the information is equally exempt under all of the alleged exemptions. . . . The itemization and indexing that we herein require should reflect this."); Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988) (stating, in dicta, that although there is "no set formula for a Vaughn index[,] . . . the least that is required, is that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.") (citations omitted). Cf. Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987) (holding governmental agency's Vaughn index was sufficient where it submitted declarations that "describe[d] in detail the contexts in which all the documents were collected[,]" and contained "a copy of every document, in redacted form, that appellant received . . . and two lengthy affidavits discussing the redactions.").

In the example referenced above here (document number 19), the Vaughn index does not indicate what portions of the document falls under which exemption. Indeed, the defendants' justification for why the document is protected by the deliberative process and attorney work product exemptions does not provide any description about the "information" contained in the email that allegedly is protected under the claimed exemptions. Although it is true that "[t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege[,]" Delany, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987) (citation omitted), it is also true that courts "will simply no longer accept conclusory and generalized allegations of exemptions . . .[,]" Vaughn, 484 F.2d at 826. Accordingly, the Court will require the defendants to supplement their Vaughn index at

the conclusion of its supplemental search[18] for documents responsive to plaintiff's FOIA request.[19]

III. Conclusion

For the reasons set forth below, the Court will deny the defendants' motion for summary judgment, and grant the plaintiffs' motion in part, to permit the defendant to conduct a supplemental search for documents responsive to plaintiffs' request and to supplement its Vaughn index in accordance with the Court's rulings as set forth above. The Court will then permit the parties to revise and supplement their summary judgment motions based upon the results of the defendants' search for additional responsive documents. An order consistent with the Court's

---

[18]Plaintiffs also argued that the defendants' Vaughn index is insufficient because its cut-off date is January 10, 2002, and there have been, since that time, ongoing discussions between the State and the BLM. Pls.' Mem. at 4. Plaintiffs argue that the defendants should be required to produce any responsive documents that were created since the January 2002 date. Id. Defendants counter, arguing that the index was prepared to justify its withholding of documents based upon the June 2001 BLM Utah search and the January 2002 search performed at BLM's Washington D.C. offices. Defs.' Mem. at 5. The Court finds it is odd that the index stops on January 10, 2002, at a time when Ms. Edwards stated in her affidavit that she had not yet received the plaintiffs' request, and therefore did not begin her search for records until January 25, 2002. Edwards Decl. ¶ 3. In addition, Ms. Edwards indicated that she was aware of documents being forwarded from the office of the BLM's then-Acting Director, Nina Hatfield, in February 2002, "for inclusion in the Defendants' Vaughn Index or package of released materials." Id. ¶ 5. However, that nuance aside, the Court agrees with defendants that the agency does not have an "obligation, after it has once responded fully to a FOIA request, 'to run what might amount to a loose-leaf service' for the benefit of the applicant . . ." McGehee v. CIA, 697 F.2d 1095, 1103 (D.C. Cir. 1982) (footnote and citation omitted). However, it is also clearly established that it is not the case that the "use of a time of request cut-off date is always reasonable." Public Citizen v. Dep't of State, 276 F.3d 634, 643 (D.C. Cir. 2002). The test is one of reasonableness and the "agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." McGehee, 697 F.2d at 1101. Given the fact that the Court has determined that the agency did not previously conduct an adequate search for responsive documents, the agency would have a heavy, if not impossible, burden to justify conducting its renewed search subject to a time limitation based upon the date of plaintiffs' initial request. It would therefore be prudent for the defendants to produce responsive and non-exempt documents they uncover at the time their supplemental search is conducted, regardless of when the documents were created.

[19]Of course, the Court is cognizant of the careful balance that the agency must strike in order to provide enough information to justify its non-disclosure without in the process revealing the confidential information it seeks to protect. However, the remedy to the "unusual circumstance, where the agency cannot describe the document fully enough to show that it is exempt from disclosure without in the course of doing so disclosing the very information that warrants exemption, . . . is for the court to review the document in camera." Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir. 1992).

ruling accompanies this Memorandum Opinion.

**SO ORDERED** on this 12th day of January, 2003.

                                              REGGIE B. WALTON
                                              United States District Judge

Copies to:

Robert Wiygul
EarthJustice Legal Defense Fund
1625 Massachusetts Avenue, NW
Washington, DC 20036

Gordon Michael Harvey
Heather Graham Oliver
U.S. Attorney's Office
555 Fourth Street, NW
Washington, DC 20001